Good morning, Your Honor. May it please the Court. I'm Kevin Vienne. I'm a Deputy Attorney General for the State of California. Here for appellant and respondent in this matter. You say appellant if the State isn't used to being in that position. At least I'm not used to being in that position. Your Honor, we believe that the issue before the Court today is quite narrow. And that narrow issue arose this way. That is, Ms. Heaps prevailed in the District Court and obtained a conditional writ of habeas corpus. That conditional writ required the State to conduct a retrospective competency evaluation. She returned to the State Court and the State Court began the machinery for that retrospective competency evaluation. Her lawyer was appointed. The matter was on calendar. She appeared against the prosecutor. And they were prepared apparently the next day, according to the record, I think, to begin the presentation of evidence. At that point, the process, the procedure for the hearing was interrupted because Ms. Heath and her counsel proposed a stipulation to the issue of retrospective competency, a stipulation of fact. At that moment, there was a break in the hearing procedure. She had a discussion with her counsel. And when they returned, they entered that stipulation of fact that she was competent. She has challenged that, and this Court has asked the District Court to ask essentially whether that stipulation, by that stipulation, the State fulfilled its duty to grant her a hearing. We believe that it did. The District Court, we believe that it did because the hearing was in process when it was interrupted by her choice. Now, the District Court disagrees with us, and we believe the District Court is wrong. The District Court says that the hearing was inadequate for a single reason, only a single reason. And that reason is that the trial court, the State trial court, didn't tell Ms. Heath that if she stipulated to fact, she would go back to trial. It was in the record that if she stipulated to that fact, she wouldn't go back to trial. If she were found to be incompetent, she would be retried. The defect, the sole defect found by the District Court is that they did not tell her that if she were retried, she might be acquitted. We believe there is no such law that requires notification that someone must be, might be acquitted if retried. In fact, we believe that is perfectly self-evident. It's important to keep in mind what this case is not about. There was indeed a hearing that was begun. A counsel had been appointed. There was no question, is no question, that Ms. Heath was at the time of the beginning of the retrospective competency hearing. There is no question that she was competent at that moment. And there is no question, there's been no challenge that she received the effective assistance of counsel. So the question is one of pure formality. Was the trial court before accepting her stipulation of competence required to tell her not only that if she was retried, but also that an outcome of the retrial might be an acquittal? It steams in Congress that there can be such a requirement. And we would point simply to a day-to-day illustration in the courts throughout this nation that shows that that particular additional notification was not necessary. When a defendant in the United States waives the right to trial and pleads guilty, that defendant, according to the law of the land as expressed in Boykin v. Alabama, must be told that one of the rights the defendant is giving up is the right to a jury trial. The Boykin rights do not typically involve an additional requirement that the right to a jury trial might involve as well an acquittal. It is self-evident. And so what did – as I recall, the defendant's contentions weren't even exactly this. I mean, she had – I mean, she claimed that she didn't – that she was pressured in some way or that she was told that she'd have to go to the hospital or something like that. She has made some claims that are not substantiated in the record in any way and are not the part of the district court's decision in any way. She's made some claims that she was coerced into that stipulation. She said, essentially, that the trial court threatened her, that she would go to Patton, I believe, for – Patton State Hospital for 15 years. There is such – Kagan. But was she represented? Horwich. Oh, yes, Your Honor. She was represented by Mr. Urban, who was also – Kagan. Just a minute. Before the district court, on the remand, as to this question, as to the validity of the State proceeding. Horwich. Your Honor, I can say I'm not sure because the history – procedural history is somewhat unclear. She was represented with regard to bail, but there was a request from the – from the Federal public defender to be relieved from representation. So I'm not sure, and I believe she was pro se before the district court at that point. I believe, but I'm uncertain. Your Honor, if I may continue, I – it simply adds nothing, and it adds nothing in particular with Ms. Heath, who had been to trial before, who obviously knew what a trial entailed when she was – when the discussion in advance of her stipulation addressed the question of whether she – if she preferred to go to Patton State Hospital or not. Kagan. If she prevailed at the competency – the retrospective competency evaluation, if she prevailed, she would be retried. It was indeed her counsel's suggestion that the procedure be interrupted and that – and that she stipulate to competency. There was nothing unfair or improper. It was in return for the reduction in her sentence. Yes, Your Honor, that's correct. Or I'm not sure what it was at that moment when he proposed it, but that's – that was the outcome after there was a – after there was a break in the action at trial and Ms. Heath met with Mr. Urban. Presumably also there were discussions with the prosecutor and that offer was made. Yes, I agree, Your Honor. Your Honor, our point is really that simple. That is, if Boykin – if the waiver of a right to jury trial doesn't require notice to a defendant that that trial might result in an acquittal, then there could have been nothing wrong here when Ms. – when the procedure in advance of the stipulation indicated that a result of prevailing in the retrospective competency evaluation would be a retrial and did not include additionally that a part of that retrial might be an acquittal, there can be no problem there either. But there wasn't exact compliance, was there, with the remand order that there be a hearing? Your Honor, I don't believe anyone could suggest that the remand order would prevent the exercise of strategic choices in the course of that hearing by the Senate counsel. By the beneficiary. By the beneficiary of the hearing. She was to – By the beneficiary. I would note, Your Honor, that I – that this would be greatly different – we believe greatly different if what was going on was a stipulation to avoid an evaluation of present competence. We don't suggest that at all, and we believe California law is quite clear that that's not permissible, that a State court loses jurisdiction to proceed further once the issue of present competence has arisen. But in this case, that was not the case at all. Everyone agreed that she was going to. Also, the arrangement was structured to deal with this, as I understand it, because the stipulation was that she was competent. It was not a stipulation to an outcome. It was a stipulation to a fact, essentially. To a fact that she was competent at the time of trial in 2000, Your Honor. If the Court has no other questions, as I said, we had a single point to make. If the Court has no other questions, I'd like to reserve whatever remaining time I have for rebuttal. Thank you. Counsel, it's minus 1 minute and 40 seconds. I've exceeded. Okay. Well, we'll see. Thank you, Your Honor. Ms. Heath. Your Honors, good morning. Good morning. I am Mary Lou Heath. This is my husband of 32 years, John. He's been doing all the legal beagle work for me, because he understands it a whole lot better than I do. I stand here 3,017 days since we requested a hearing on my competency to stand trial. Since that time, the State has acted in a full and fair manner to the  I can't hear you very well. I'm sorry. The question, as I understand, Your Honors, today, is did the State of California give me a full and fair hearing on the issue of my competency to stand trial? No, they did not. The State has never held a hearing at trial, and the State, on the record, will not. He has references here. The case comes to this Court because of malfeasance of Judge Douglas A. Fettle. He lies. But may I ask you, when the State was prepared to give you a hearing, and then there was a stipulation, what is your complaint about the stipulation? I was supposed to have my hearing by November of 2004, and the State didn't manage to get me back to West Valley Detention Center and this and that and whatever else, and it dragged on until January 13th. They got an extension, okay? And Megan Beal, the head honcho in Santa Ana, where he's from, his underling, says that she believes that all they had to do was begin to initiate proceedings. In other words, show up in court. To show up in court, and that was a Friday, and the State came up and was telling my client, well, it would be a whole lot better to just do it this way, take stipulation. You'll get out six months early. And at this point, what's left of your sentence? If you were to go along with the deal that's made, then is there anything left of your sentence? About two weeks, I think. Well, maybe the State would be nice enough to forgo that, but aside from that, if you didn't have to serve any more time, would you still have this problem? Well, there's so much lying and cheating and falsifying of records by the State to do these things to, you know, keep their conviction. But do you really want to go back and have another trial? No, we're actually asking for it to be vacated. Yes, but what if it gets vacated with conviction? With prejudice and, you know, injunction against the State to say, hey, keep your hands off this lady and her family, please. But nothing in the proceedings thus far would lead to that. Well, I don't know. All we know is that, you know, the State has lied. They have falsified records. They state right on record that they will not. Yes, but if your conviction is vacated, that doesn't mean that there can't be a trial again. If you were incompetent at the time of the trial, then you could stand trial again, and the State might charge you with it. They don't have any plans to stand trial. They've already destroyed the evidence. They've already destroyed the evidence. Well, you know, you'd face a lot of proceedings, a lot of litigation. The State, I'm sure, would not just say, all right, fine. If they wanted to try you again, you'd spend a number of years again fighting over that. The thing is, is, you know, over 3,000 days ago, she was given, was asked for her hearing, and Judge Fettle refused to give her her hearing. But here we are now, and we're trying to find, you know. Well, we just went back to State court, and there again, we go to State court, and they said, we're not going to give you a hearing. We have no plans on it. Well, if you understood that a new trial was possible, would you still pursue this matter? She's innocent. I understand your position. It's a matter of honor. If that was a possibility, would that make any difference? I think that if we had, if the problem is, is the State would say, well, he's retired, we're back to Judge Fettle's court. And all the things that he's done illegally to us already, there cannot be a fair trial in his court. It'd have to be somebody else's court. One possibility, we'll complete the hearing today. One possibility is that we have, in our court, we have a mediation system where the parties go to, we have wonderful people who work for us who meet with the parties and see if there's a way to bring about a solution that both sides are really satisfied with. And after the hearing, before we make any kind of decision, we'll give you the opportunity to do that, and we'll talk to the State about it. That sounds like an asked question. You know, she's the victim here. She was the one who was attacked in her bedroom. She's the one that was almost killed. She was the one who had to be admitted to the hospital because of the attack. You know, she's the victim here, and will he have, will he come up, and will we have, be able to, you know, say, find out whether or not, in a real trial, is he a victim or is he an attacker? Well, he'll be able to tell you what there is that can be done and what can't. And it's not, you know, if you're both not satisfied with what he suggests, then right where we are today, we'll issue a decision. That sounds good. Because it says every time we go back to his state, all we do is. . . His state meaning. . . State of California system. I'm from Utah. Every time we go back to his state, his state will go as far as to, you know, they take court records and change dates on them and put them back in the record. All right. Well, let's finish with where we are here today, and we'll have our hearing today, and then we'll see about the mediation, and if that doesn't work, we'll issue whatever decision we have to issue under the law. So your. . . I think the stipulation that went on in the last state court hearing. We were not in on it. It was given to us by force. It was presented to us by the DA through our attorney. Was that attorney who represented you? He was detained by you? Yes. Did you hire him? Yes. And he suggested that you go along? Yes, because, you know, the state said they would give me six months off my sentence, and that was in January, and when I finally got my face sheet, it was the end of August. It was going to be my out date. That's six weeks off. And but you agreed to that stipulation? I had agreed to the six months out early. Yes. This is the abstract, and then her face sheets are here. But what was. . . I mean, why shouldn't that stipulation be binding? What was wrong with it? It wasn't binding on them. It was a contract made according to Brown v. Pohl, which is from the Ninth Circuit, that when the state makes an agreement in court with the defendant, they have to uphold their part of the system like a contract. And what was. . . And they violated their end of the contract. How did they do that? They didn't give us six months out early. They didn't, you know, they falsified records to, you know. . . They gave us a six months plus time so we would be out early July. Yeah. That was the stipulation. Their early July date was August 25th. That is their early out July date. You could have gone right back to court on July. . . We tried. We spent the time in court, and the district attorney, Brian McCann, refused to acknowledge the calls of our attorney, Russ. Suppose they were to agree now that because of that, there's nothing left of the sentence, and you can just go home. Well, I'm into the fact that they violated a contract. I'm the injured party now of a violated contract. I have, you know. . . Is that how they violated it, instead of letting you out in July? Well, they had no intentions of honoring the contract. No, no, no. But what. . . The contract, as you see it, required that, provided that your wife would get out in July? July early. July early. They didn't give a date. And instead, they said August. . . 25th. Yeah. It's in the face sheet that's in our brief. Now, she didn't actually go to jail, did she? Oh, she spent 2,000 days. No, no, no. I mean, after that stipulation. Oh, yes. After what time it took to transport back to prison. She stayed in jail until August? No, until. . . Oh, until June 24th, when the district court. . . You didn't have to serve until August. No, this court here brought us out. No, only because the district court got me out. Oh, the ninth court. This court here passed. So the only dispute is over whether she should serve from sometime in June until sometime in July or August? Well, a month and a half is what they're short. Okay. But it's still a violation of contract that they refused to negotiate with. Okay. So what you want, then, is that you not have to serve the extra month and a half? Well, yes, that's what we want. But I still have an underlying rule that she's the victim. And I can't. . . You know, having her as a felon just bothers us because of her. . . She's an upstanding citizen. I mean, you know. . . I sit next to the sheriff in the county commission meetings. You know. . . And the thing is, is she comes down to visit her mother. And her brother goes out and gets high on drugs and comes in and tries to kill her. And she's the victim. You know, and this is an argument that we've been trying to argue down here in state court. But they're not going to listen to us. And like I said, even in Brian McCann's declaration of. . . Her declaration, she states openly that she has no plans of having a hearing for years until she goes doctor shopping. All right. I think we see what the problem is. And we'll hear from the state again for a minute or two. And then we'll. . . But, you know, it says if her problem was answered by the state 3,000 days ago. . . You know, she wouldn't be paying the price for what Judge Fettel's crimes are. All right. Well, let's. . . We'll hear from the state. Thank you, sir. Thank you. Thank you, Your Honor. Let me ask you one question. Certainly, Your Honor. Would the state be willing to meet with our mediators and see whether what could be done about this? Yes, Your Honor. We certainly are. Indeed, I would like to let the court know that there was. . . What happened in the. . . Well, we already believed we had reached this. . . If I may say, I have to reject their claims of unlawful activity by the state. We're accused of a number of things. There's no record to support that. I appreciate the court's humanity in hearing the heats out there. But we disagree with that. But here's what happened. The agreement was to adjust on the abstractive record the days of pretrial credit with the purpose of achieving a six-month earlier release for Mrs. Heath. That was the district attorney's desire. That was our intention in the attorney general's office in the district court all along, that she obtain that benefit of her bargain. What happened is that when they made the calculation in the prison for those additional credits, we believed that they made a mistake in that calculation. And, indeed, at that time, while Mrs. Heath was being represented by the federal public defender in the district court, we had executed a stipulation in the district court that recalculated those credits and directed her release in July of 2005. That never happened. She wasn't released in July of 2005 because she was granted bail in about June 2005. But it has been our desire and our inclination always to comply with the benefit of that. How is your understanding of whether there's any time left at all in her sentence now? My belief is about three weeks. We think it is about three weeks remaining. Well, whether this is all worth over three weeks, you'll have to consider it when we have a mediation of this. Yes, Your Honor, I'm not in a position to remark on that today. I understand. But, you see, Mrs. Heath, what the counsel has said is that you were really right, basically, about the time you would get out of what they thought you should get out of this. This is not a unique circumstance, unfortunately. Are you in agreement with us?  You were in full agreement with us. Well, sometimes these things happen. And I can tell you there have been lots of cases we have had where people have been held longer than they should because there have been miscalculations by the people in the prisons. It's really not the fault of the district attorney or the state attorney general, but it happens in those prisons. There's even a case where they let somebody out early. That's not the usual one, but a very prominent person was let out early, and then they went and picked her up again and threw her back in because they said they made a mistake in calculating. They do make mistakes in the prisons, and nobody can control that. All we can do is try to make up for it somehow. But, fortunately, you didn't have to serve that time. But the fact that they said until August is not really the fault of the district attorney or the attorney general. But, really, it didn't do that much harm because you didn't have to serve that time. Now we're down to questions about three weeks. The state's willing to go to federal mediation, and I can assure you you may not agree to anything there, but I can assure you you're going to have people you can have complete trust in. They'll be fair. So we'll see what happens with the mediation. And then if it doesn't work out, we'll issue a decision on the basis of your complaints. But thank you very much, all of you, for your cooperation. Thank you, Your Honor. Well, the case just argued we will issue an order regarding mediation and delaying submission until after that. Thank you all very much. All right. The next case on the calendar is
judges: Reinhardt, Berzon, Miner